Aptive Environmental v. Town of Castle Rock. Council, when you're ready. Good morning, and may it please the Court. My name is Brian Connolly, with the Law Firm of Ottum & Johnson in Denver, and I have the privilege of being here this morning on behalf of the Town of Castle Rock. Joining me at Council table is the Town's Deputy Town Attorney, Heidi Huggdahl. Today we present the Court with a question of first impression. It's a question about the constitutionality of a 7 o'clock p.m. curfew applied exclusively to uninvited, door-to-door commercial activity. Every other case involving a curfew, including all the cases that Aptive has cited, has involved non-commercial speech. So the Town, in reliance on those cases, attempted to draw its curfew in a more limited fashion to apply solely to business activity. In presenting our argument today, I'd like to focus on three themes that have prevailed through this case. The first is experience. In his compilation of lectures entitled The Common Law, the future Justice Oliver Wendell Holmes wrote that the life of the law has not been logic, it has been experience. And that's true in this case. It's about the experience of the Town, its elected representatives, its staff, and its residents, in their attempt to employ a common-sense solution to what ultimately is a constant yet practical problem. The second theme that prevails in this case is that it's not about data. The Town, with whatever limited resources it has, did as the Supreme Court allows it to. It relied on anecdotes, consensus, common sense, the life experiences of its legislators, and the experiences of other municipalities in enacting and enforcing the curfew. And the third theme that prevails throughout this case is that this regulation is really a limited burden on commercial activity. It's beyond dispute that the Town has zoning authority, and through that authority it can restrict commercial uses from residential areas. It also has the authority to limit the times at which commercial enterprises operate. So under the same rationale, the curfew offers a limited measure to avoid the practical problems that are attendant to commercial activity in a residential neighborhood. To the extent this Court considers the curfew a speech regulation, which we disagree with, it should bear in mind the Supreme Court's rationale for commercial speech protection that it outlined in Virginia Pharmacy Court, which is to ensure that the public has access to lawful and accurate commercial information. The Court clarified that further in 44 Liquor Mark v. Rhode Island, when it said, quote, the State retains less regulatory authority when its commercial speech restrictions strike at the substance of the information communicated rather than the commercial aspect of it. The curfew is entirely unconcerned with the substance of the information that's communicated. Instead, whether it's characterized as a regulation of speech or not, the curfew is concerned with balancing the interests of solicitors in earning a profit and the interests of residents in maintaining their privacy. You treat canvassers differently, though, right? That's correct, Your Honor. And why isn't that a distinction that matters? Well, I think it is a distinction that matters. The Supreme Court has consistently allowed for the treatment of noncommercial speech differently from commercial speech. And the record in this case reveals that noncommercial canvassers are not a problem. The town's witnesses uniformly and in an uncontroverted manner testified that noncommercial canvassers had not been a problem in their experience and the experience of their constituents. They did, however, indicate that commercial soliciting had been a problem. And what commercial solicitors were problems? Were they commercial solicitors that did not abide by the restrictions as it relates to time? What commercial solicitors were a problem? So, I don't know if there was a particular class of commercial solicitor in terms of what they were selling. I'm not sure if that's what you're asking. No, not what they were selling. So, the town's former clerk of 20 years who was the primary point person who received complaints from residents testified at trial that she had received complaints about once per week about solicitors prior to the curfew's enactment. And she testified that several of those complaints were about solicitors that were engaging in solicitation in the later evening hours. And what she subsequently testified to is that while she continued to receive complaints after the curfew was enacted, most of those complaints were directed at the fact that maybe a solicitor was unlicensed or some other violation of the ordinance  So, I'd also remind the court that throughout this litigation, Aptiv has agreed that some version of a curfew is appropriate. Yet it disagrees with the exact time at which this curfew has been set. I'm reminded, in light of that argument, I'm reminded of the district court's opinion in Acorn v. Town of East Greenwich where it observed that that type of inquiry would place courts in the untenable position of being called upon to make metaphysical and increasingly finite distinctions as to the hour, minute, or second that divides a constitutional curfew from a non-constitutional one. So I think as long as Aptiv concedes that a curfew is constitutional, it simply places the court in the position of being a super-legislature, a role that this and other courts have certainly rejected. You alluded to the fact that it's your view that this restriction or this ordinance is content-neutral, is that right? So it is content-neutral within the realm of commercial speech. Within the realm of commercial speech. And in your view then, is it congruent with the Supreme Court's decision in the city of Cincinnati, and if so, why? So the Supreme Court's decision in the city of Cincinnati related to commercial news racks. Yeah, and you had newspapers and people who were selling other stuff. And in both instances, there was some level of commercial aspect associated with them as people were buying papers. And so explain to me why in that case they did not find that restriction to be content-neutral, and so why is that not, what does that say about this case? So let me back up for a minute and talk about content neutrality in the realm of commercial speech. So what the Supreme Court has said is that content-based regulations of commercial speech, that is, that go to the content that makes it commercial, that those are evaluated under the central Hudson analysis. And so that's different from a content-based regulation of speech in the non-commercial context that would be evaluated under strict scrutiny. So I think the use of the term content-based in Cincinnati or Discovery Network is relative to the fact that whatever the newspapers that were being sold that were commercial were being sold because they were sales newspapers. And I think it's good that you brought that case up, Your Honor, because what the court in the city of Cincinnati found was that that restriction on commercial news racks was wildly under-inclusive. There were 2,000 non-commercial news racks, and then there were only 62 commercial news racks. And so when you look at what the city's interests were there, which was aesthetics essentially, the elimination of 62 out of 2,000 news racks hardly had any impact on the aesthetic character of the city. Contrast that to this case where, like I said, you have uncontroverted testimony that suggested that non-commercial canvassing is not a problem, that residents' privacy is not being interrupted by non-commercial canvassers, at least according to all the uncontroverted testimony presented in this case. Is that truly uncontroverted? Isn't there some evidence that the canvassers and non-commercial folks were causing disturbances of the residents? So there was police department data that suggested that there were calls about non-commercial canvassers that came into the police department. Okay, so it's unfair, isn't it, to say that it's uncontroverted that there were no complaints about canvassers and non-commercial. So I think actually digging into those numbers, and this case is not about data, but digging into those numbers, what that data showed was that for the year prior to this case being brought, that there were 11 complaints about non-commercial canvassers after 7 p.m. 11 complaints over the course of a year in a town of 58,000 people is not many. Now what that data also showed was that there were zero complaints about commercial solicitors after 7 p.m., which we certainly believe shows that the ordinance is working, that commercial solicitors are adhering to the restriction and not invading people's privacy or interrupting people's dinners or whatever they might be doing after 7 p.m. So I think the testimony that certainly… Let's assume there were 11 complaints about commercial solicitors. And 11 complaints about the canvassers. And 11 complaints about the canvassers. How does the evidence look for you then? I mean, you know, I guess I'm not really sure. I mean, I think the rub here is that the record's really thin as to how large of a problem you had in the first place and that this is a restrictive measure, sort of a launching a missile to kill a mouse type of issue. So I guess we disagree with your characterization of launching a missile and that I think it's a fairly limited burden on commercial activity. But I appreciate that. But if the point of the appellee is that that is their prime zone time. I mean, so it's not a limited burden. I mean, if that's when they make all their money, that's all relative. I mean, you're talking about a period, you know, a large expanse of time. But if that's their prime zone, then that is a significant burden on them. So, I mean, I don't see how that works. So let's talk about that for a second. So that is their contention that that's their prime time. Their own data doesn't bear that out. Their own data actually shows that they sell more contracts well before 7 p.m. But even assuming that that's their prime time, I think that there are a few problems inherent in that. Number one is what do you do when someone's prime selling time is 11 p.m. to midnight, where it would have an even greater impact on privacy or even on safety? Well, there's no evidence of that. Go ahead. No, that's fine. It means that you have a stronger argument that there is a fit with this regulation than you have now. And that's the point. That goes to the missile to launch, to hit a mouse. I mean, you say this case is not about data, but there has to be some data. And, I mean, you reference this WIPFORIT case, but we talked about WIPFORIT in Pacific Frontier, and we noted the evidence in WIPFORIT, and there you had 106-page summary of findings. You had newspaper editorials. You had complaints from citizens. Those were viewed as not rigorous data, but they were data, and they were far apart from what you have here. And so the question is whether there is significant basis here to justify this regulation. So there is a balancing that's going on, or at least a fit that's going on, as it relates to this substantially advanced. There's a real problem, you know, in the Citral Hudson language. And so it does matter. So I respectfully disagree with the notion that it is about data. So a local government is entitled to rely on the experiences of other local governments. There are other cases, the Viven versus Shreveport case, that details in excruciating detail the crime problems that Shreveport had associated with its curfew. What if the evidence about your city differs from the experience that you've heard about from the other cities? Can you disregard the evidence on the ground and say, because this happened in Shreveport, we're going to do it here too? I think you have to look at it. So Castle Rock is a community that has grown exponentially in the last 20 years. And so Castle Rock is a growing city. Undoubtedly was looking to cities such as Shreveport or Denver or whatever other large cities and saying, we're a growing city. We want to avoid those problems. Well, that sounds like preemptive to me. And the notion that you decide, well, one day Castle Rock will be like Denver. We aspire to be like Denver. So we're going to regulate like Denver so we can deal with Denver problems. Well, that's OK if you're not hurting somebody. And if you're not impacting on somebody's constitutionally protected interest, well, the argument is you are. So why don't you wait until you become Denver and then do what Denver does? Or why don't you wait until you become Shreveport or closer to and then do what they do? In response to that, Your Honor, I would point to case law. City of Renton, I would point to the Third Circuit's decision in Phillips v. Bureau of Keyport that says, first of all, you don't need pre-enactment evidence in order to justify a speech regulation. You need evidence at the time it's challenged. And I would also point to the fact that those cases certainly allow municipalities to look to the experiences of other municipalities. Comparable experience becomes the operative point. I mean, whether it's comparable experience and you don't need evidence, you need evidence when it's challenged. Well, it's challenged now. We're live. And looking at this record, it doesn't seem very strong. I think the problem that presents, Your Honor, is that in that case, any old law where people aren't around to testify about the law when it's eventually challenged would then fall under the First Amendment. Because there are speech restrictions that are 100 years old. And so I guess the question is if we're going down that path, then we're requiring local governments to maintain records for 100 years to justify it. I'm inconsistent here, I think. First, you said you don't need to have the evidence when you pass it. You have to have the evidence when it's challenged. And now you're saying, but you can't have the evidence when it's challenged. It might be going on for 100 years. We don't know what happens without it. When do you need evidence? Yeah, I see my time is about to expire, but I'll respond to the question. So I'm sorry if you misunderstood, Your Honor. Certainly, I think you need the evidence when it's challenged. Okay. And as Judge Holmes said, isn't that now? Isn't now when it's being challenged? Well, certainly. I mean, we're here. Okay. So now you have to have evidence. And our concern is that there's pretty skimpy evidence here. So let's, again, go back to, like I say, you don't necessarily need pre-enactment evidence. That's the holding of Phillips. In this case, pre-enactment evidence was presented. Like I said, the town clerk, who was the primary point person to receive complaints from residents, indicated that there was about one complaint per week about commercial solicitation and that many of those complaints related to the hour at which that occurred. She then testified that that became less of a problem after the curfew was enacted and the data from the year prior to this case would bear out that there were no complaints about commercial solicitation in the year prior, which, again, suggests that the curfew is doing what it was intended to do. Let me ask one question. I should know the answer to, but I don't have it handy. On the do not knock list, did that have time constraints on it, or was that do not knock any time? The do not knock list is for any time. Not restricted to after 7 p.m.? Correct. Okay. Thank you. Your Honor, may it please the court, my name is Jeremy Fielding. I'm here at the table with my co-counsel, Mr. Jonathan Kelly. We're pleasured to be here before the court this morning. Judge Carson, I think you put your finger on the problem here with the colorful metaphor you used. Where you said that what Castle Rock has done is used a missile to kill a mouse. I didn't make it up. I robbed that out of a Supreme Court decision. Well, however you want to license that particular statement, you put your finger on the very problem here. The case law is very clear on this. That under compelling Supreme Court, under controlling Supreme Court precedent, and the precedent from this circuit, in order for you to regulate speech, you have to do two things, to use your metaphor. You have to prove that, number one, there are mice that need to be killed. And then second, you have to kill them with mousetraps, not with missiles. And both of those go to the second and the third prongs of the central Hudson theft. And both of those are reasons why this ordinance and this curfew is constitutionally infirm. First, it is an unworkable solution to a problem that never existed. There is not and never has been a problem in the town of Castle Rock caused by registered solicitors operating after 7 p.m. The record is devoid of any evidence on that point. The only evidence they have that supports it is the conjecture and speculation of witnesses who said things like, it might work to probably do this if we possibly did those things. What about the one complaint a week that we just heard about? I don't know what counsel is talking about. The only evidence of a complaint about a time restriction pre-enactment was a single amorphous complaint about a 945 knock on someone's door by a solicitor or canvasser of unknown origin. Certainly no one that was registered because they couldn't track who that person was. The record is entirely devoid of evidence other than that one complaint. That's what the trial court noted in its ruling that it said basically it used the aphorism of the tail wagging or the tail of the dog. It says this ordinance was really adopted as this giant dog with all of these permitting and background checks and all these otherwise normal constitutional restrictions. But then Castle Rock added this curfew because there's a memo that was given by the Colorado Municipal League that says, one thing you may consider doing is adding a time restriction. And so one of the council members at the meeting says, well, we did have this complaint about 945. And they talked about an 830 curfew. And they said, well, it gets dark at 830 in the wintertime. So let's just pick seven o'clock. That's the sum total of the evidence. Let me pursue how far this this reasoning goes. So you have a retirement community, older folks. They get up early. They go to bed early. They don't want to be solicited for money. They don't want to be commercial solicited after nine o'clock. Can't they just say, I don't want to bother you after 9 p.m.? Do they need what is it? What more do they need to make it constitutional? Judge, you're yes. The answer is yes. They can absolutely say that. And that goes to the third prong, which is the less the less restrictive means to address it in Castle Rock. There is not a single person. Why is that OK without any evidence? Well, because because because this is the no not list or the no soliciting sign. No, no, no, not this was any time. And then and then and the sign is a problem because some people think that's unsightly. They don't want to. They don't want to mar the parents of their house with signs like that. They don't put up political signs. They don't want signs. Let's just focus on this. Is that unconstitutional for that communities? Council City Council to just say we don't want to be bothered after 9 o'clock. We're going to bed and so on. Do they need to show what do they need to show beyond that to avoid it being found unconstitutional? Well, I think under this court precedent in the Pleasant Grove case, which applied to commercial solicitation, they would have to show two things because it regulates speech. They'd have to put on evidence that there was actually a problem with commercial solicitors knocking at times that created privacy issues. That's number one. They couldn't just assume it. And then the second thing they have to true if they did it for 11 p.m. Well, if there were problems at 11 p.m., I would know that commercial solicitors are unlikely to knock at 11 p.m. when the purpose is to sell layers. Well, they don't have any evidence. They just don't want to have to deal with it. They don't want anybody to be bothered. Maybe they just started this community and they wanted to be a nice community where people sleep peacefully and aren't bothered by commercial solicitors. They no matter what time they put, they need to show that there's somebody gets a free shot before you can pass an ordinance. I think to answer your question, Judge, I think because it involves free speech, I think the court has created a burden that's on the city. And the answer is no, they could not do that. They would have to show. I thought the Supreme Court had said in some of these cases tradition and common sense can be looked to and not just data. They can, but it's not about data. Counsel has talked a lot about data. It has to be evidence. Well, does it have to be evidence always of a showing of a problem? At least that's what I derived from Judge Hart's line of questions. I mean if you look at – I think the Wentworth case talked about common sense. If you have a retirement community, that's going to be evidence. They can have evidence. This is the demographic of our community. This is the nature of the people that are here, and heck, you could survey them. What's your average time of going to sleep? Boom, you have that evidence. Then common sense will tell you that if you have a restriction that stops people from knocking after 11 o'clock that you're resolving a problem, right? It could. Under a circumstance where you just told me that there was a community where people are knocking after 11 p.m. and that this curfew would solve it, then yes, those are these facts. I know that. But the point I guess that is being addressed here is there are – in trying to see how far we're going on this down this road, there will be situations where we will not necessarily have to have concrete evidence of an existing problem. Perhaps. Here's what I would note is the court addressed that very question, the Tenth Circuit, in the Pleasant Grove case in 2002 because the same argument was made. In that case, like this case, the defendant, the town, seeking to defend the restriction on commercial speech, put forth a bunch of evidence that was based upon what they called common sense and anecdotes. And it was testimony very similar to what you heard here, which was people getting up and saying things like, this makes sense. It would seem that this would not be a problem. Here's what the court said in a footnote 12. Pleasant Grove attempts to fall back on language from mainstream marketing that a commercial speech regulation may be justified by anecdotes, history, consensus, or simple common sense. The city argues that anecdotes and common sense justify its ordinance. And it cites the testimony to that. But then it points out that that language in mainstream marketing comes from the Supreme Court case of Wentworth. And it says, what's the quantum of evidence that was necessary in Wentworth? Here's what the court said. What constituted sufficient evidence in that case, anecdotal evidence, provides helpful guidance as we evaluate Pleasant Grove's evidence. The Florida Bar conducted a two-year study of the impact of lawyer advertising and solicitation and compiled a 106-page summary of its findings, including survey results, newspaper editorials, and complaints filed by citizens. Then this court concluded Pleasant Grove's evidence is wholly insufficient compared to that which was evaluated in Wentworth. And what's striking is when you compare the evidence that was put on in the Pleasant Grove case with the evidence here, which was insufficient for this circuit's purposes in the Pleasant Grove case, it's even less here. In the Pleasant Grove case, for instance, there was at least some evidence that commercial solicitors were engaging in some crimes. Now, it was de minimis, and the court notes that in reaching the conclusion. Here, what the actual evidence is, and this is from the court's factual findings, which can only be reviewed under abuse of discretion standard, there is no evidence, this is from the court's opinion, that commercial solicitation after 7 p.m. would decrease crime or increase public safety. In fact, the court found precisely the opposite. Based on the testimony of the chief law enforcement officer of the city, he testified, among other things, there is no evidence suggesting solicitors commit more crimes after 7 p.m. To the contrary, he testified crime is more common during the day when people aren't home. Then, to your point, I think Judge Carson, actually Judge Holmes, you asked about canvassers. He testified if there was a problem in the city, it was a problem with unregistered solicitors and canvassers bothering and annoying people. And that's a problem because they have specifically absolved those individuals of having to get permits, to know who they are, be background checked, and they don't even have to abide by the no soliciting signs that are on the doors. Finally, and this is the most telling admission of all, the chief of police testified that if the curfew had been repealed, it would not have a material impact on public safety. That's the chief law enforcement officer of the entire city. That's case set match on the crime justification. On the privacy side of things, as I mentioned before, the evidence at trial was a single complaint about time, a 945 complaint. And here's the reason. There's a reason why there's not complaints in Castle Rock about commercial solicitors. And it's because they have a very robust system that they created that the Supreme Court has endorsed in the Stratton case and that this court endorsed in the Pleasant Grove case as a less restrictive means, which is if you don't want commercial solicitors knocking on your door during the day or at any point in time, all you have to do, you have two options. You can sign up for a no knock list or you can put a sign on your door. That's why there's nobody complaining about privacy violations in Castle Rock from commercial solicitors, because everybody in Castle Rock that wants to opt out can opt out. And that's what's striking about the Pleasant Grove case. I would suggest that the two cases that really control the court's disposition of this case is the Coors case from 1995, which sets forth the standard. And what's striking is you'll see in the briefs that Castle Rock is submitted in this case. They actually argue that they say that they use what I what I call the Seinfeld defense, which is that if you believe it's true, then it's OK. They put witnesses on the stand and they said, as long as it's reasonable for me to believe that something is the case, then that meets my burden under central Hudson. Here's what this court said about that in the Coors case. The government argues that it need only demonstrate the Congress reasonably believed that the statutory prohibition would further its objective when it enacted the labeling restriction. The Supreme Court has decided even felt, however, in which it articulates a standard that is much stricter than the reasonably believed standard the government would have us adopt. Then it says what the government has to prove. A government body seeking to sustain a restriction on speech must demonstrate the harms it recites are real and that its restriction will, in fact, alleviate them to a material degree. Then in the Pleasant Grove case, the court adopts that same even felt standard specifically to a commercial speech case involving solicitation and recites it again. Pleasant Grove must demonstrate the harms it recites are real and that its restriction will, in fact, alleviate them to a material degree. It walks through the evidence which was stronger than it was, much stronger than it was in this particular case, and ultimately concludes that, quote, all the evidence that is offered, the city has provided no evidence other than conjecture to support its argument that it would deter crime. And then, and I think this is the second and most important point as well, and the trial court didn't get to this because it concluded that it didn't meet, that they failed to meet the second, the burden under the second prong. But it's an independently sufficient basis for the court to also invalidate the ordinance. And that is, it's not, there are less restrictive ways to do it. Here's the test as articulated by this circuit in the Pleasant Grove case, quote, the regulation is unconstitutional. The government interest could be served as well by a more limited restriction on commercial speech. Then citing to the Stratton case, which is a Supreme Court case, and in their briefing, the Castle Rock says Stratton doesn't apply because it's a commercial. It's a noncommercial speech case. The court actually, this circuit says, although Stratton involved religious speech and the court explicitly acknowledged the village arguments might justify a regulation speech. So you're reading from which case I'm reading from the Pleasant Grove case. The Supreme Court's analysis persuades us that Pleasant Grove has not met its burden in this case. And then it says, why not? Pleasant Grove enforces compliance with posted no solicitation signs. It requires proof of age, address, and identification to photographs and background checks of all applicants. Plaintiffs do not challenge any of these requirements, which may assure adequately citizens' privacy and provide law enforcement with the means of identifying potential criminals and deterring crime. They concluded, as a result, that it did not meet the second prong of Central Hudson either. The third. Sorry, the third prong of Central Hudson either. So both of those bases and both of those things are true here. Those are the same two justifications that are asserted here by Castle Rock with significantly less evidence. Well, there's some reason to question your no solicitor sign thing, isn't there? I mean, even your client's summer sales manual says that, quote, some reps believe that homes with no soliciting signs are the easiest sale because most other solicitors are afraid to knock on them. It does, though. The testimony at trial was that that only applies in situations where there's not a law that prohibits it. So there's plenty of places that have plenty of places that exist with laws and without laws. But where it's a law not to knock on no soliciting signs, my client, of course, insists that its sales representatives always comply with the law. I would note also to answer your question, Judge Holmes, there was no evidence of any instances where a commercial solicitor violated, knocked on a knocking door except for one. And it was a gentleman who was sight impaired and who made a phone call to – there was a complaint call and there was a follow-up to his boss who explained the situation and there was never a problem again. So there is no record here of kind of rampant violations of the no-knock list. In fact, to the contrary, what the evidence shows is it works very well precisely because there is no evidence of any complaints about solicitors – complaints about commercial registered solicitors. Again, as well you would expect when to become a registered commercial solicitor in Castle Rock, you almost have to give a vial of your blood in order to be able to be there. They have to know who you are, where you're going, the color of your car, your license plate, your permanent address. And the notion that these people would be inclined to violate the law or commit crimes is preposterous, which is why the Supreme Court in Stratton said – You know, the red light has been on for a minute. Oh, I apologize. I thought I would – yeah, my time is up. Unless the court has any questions, I apologize. Thank you. I'll give you a minute to respond. I'll take a minute to just distinguish the Pacific Frontier case from this case. So that case can be distinguished on three grounds. The first is that it was an appeal from a grant of a preliminary injunction, which this court would be using a much more deferential standard. The second is that the interest that was at stake, the public interest that was at stake in that case was solely public safety. It had nothing to do with privacy. And then the third is that the reason what this court found as being problematic with that restriction was that it was a $1,000 bond requirement that applied to any commercial solicitor in the community. And the city in that case did not even have a means for anyone who had experienced crime to collect on that bond. So, of course, it didn't advance the town's interest or the city's interest because there was no means for anybody to avail themselves of the $1,000 bond. Here, I would submit to you that the evidence shows that there was a problem, that the problem existed in Castle Rock, it existed in other communities, and that Castle Rock's imposition of the 7 p.m. curfew has materially advanced its interest in privacy and safety. Thank you. Thank you, counsel. The case is submitted. Counselors, please.